# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | | |
|---|---|---|
| THE CINCINNATI SPECIALTY UNDERWRITERS INSURANCE COMPANY, | § § § § | |
| Plaintiff, | § § | |
| V. | § § | CIVIL ACTION NO. 6:18-CV-00161-JDK |
| PREFERRED WRIGHT-WAY REMODELING AND CONSTRUCTION, LLC DBA WRIGHT-WAY REMODELING & CONSTRUCTION and MARLA CRAIG, | § § § § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

This is an insurance coverage dispute. Plaintiff The Cincinnati Specialty Underwriters Insurance Company ("CSU") seeks a declaratory judgment that it owes no duty to defend or indemnify Defendants Preferred Wright-Way Remodeling and Construction, LLC ("Wright-Way") or Marla Craig ("Craig"). CSU has filed a Motion for Summary Judgment (Docket No. 30), to which Wright-Way and Craig have responded (Docket Nos. 33 and 36). CSU filed a reply (Docket No. 38), and Defendant CSU filed a sur-reply (Docket No. 40). Wright-Way also filed a Motion for Continuance asserting that CSU's summary judgment motion is "premature." Docket No. 31 at 3. Similarly, Craig filed a Motion to Extend Time to respond to CSU's Motion for Summary Judgment (Docket No. 32), although Craig thereafter filed a response (Docket No. 36).

For the reasons stated below, the Court **DENIES** CSU's Motion for Summary Judgment and further **DENIES** Wright-Way's Motion for Continuance and Craig's Motion to Extend Time as moot.

## BACKGROUND

CSU issued a commercial general liability policy, Policy Number CSU0031921, to Wright-Way, effective from October 5, 2015, to October 5, 2016. Docket No. 1 at ¶ 3.1; Docket No. 30, Exhibit C at PL0015. The Policy obligates CSU to defend and indemnify Wright-Way for claims for "bodily injury or property damage" arising during the policy period:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

Docket No. 30, Exhibit C at PL0015.

The Policy includes an "Independent Contractors Limitations of Coverage" Endorsement providing that the insurance will not apply to claims arising out of "operations performed for you by any independent contractors or subcontractors," unless certain conditions have been met:

**INDEPENDENT CONTRACTORS LIMITATIONS OF COVERAGE**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

A. **Section IV – Commercial General Liability Conditions** is amended to include the following language:

As a condition to and for coverage to be provided by this policy, you must do all of the following:

1. Obtain a formal written contract with all independent contractors and subcontractors in force at the time of the injury or damage verifying valid

2

> Commercial General Liability Insurance written on an "occurrence" basis with Limits of Liability of at least:
>
>     a. $1,000,000 each "occurrence";
>     b. $2,000,000 general aggregate, per project basis; and
>     c. $2,000,000 Products-Completed Operations aggregate.
>
> 2. Obtain a formal written contract stating the independent contractors and subcontractors have agreed to defend, indemnify and hold you harmless from any and all liability, loss, actions, costs, including attorney fees for any claim or lawsuit presented, arising from the negligent or intentional acts, errors or omissions of any independent contractor and subcontractor.
>
> 3. Verify in the contract that your independent contractors and subcontractors have named you as an additional insured on their Commercial General Liability Policy for damages because of "bodily injury", "property damage", and "personal and advertising injury" arising out of or caused by any operations and completed operations of any independent contractor or subcontractor. Coverage provided to you by any independent contractor or subcontractor must be primary and must be provided by endorsement CG 20 10 (7/04 edition) and CG 20 37 (7/04 edition), or their equivalent. Completed operations coverage must be maintained for a minimum of two years after the completion of the formal written contract.
>
> **This insurance will not apply to any loss, claim or "suit" for any liability or any damages arising out of operations or completed operations performed for you by any independent contractors or subcontractors unless all of the above conditions have been met.**

*Id*. at PL0073. (emphasis in original).

On March 20, 2018, Marla Craig filed a Petition in the 7th Judicial District Court, Smith County, Texas, against Wright-Way and Michael Jennings Custom Woodworks ("Jennings") (the "Underlying Lawsuit"). Docket No. 30, Exhibit A at PL001. Craig alleges that on March 27, 2016, she was injured by a kitchen cabinet detaching from a wall at her home and striking her in the head. *Id*. at PL003. She claims that Wright-Way was the general contractor for the home, that it "maintained the overall construction responsibility for the home," and that it "hired [Jennings] to install the subject kitchen cabinets." *Id*. at PL002–03. Craig offers the following theories in support of her case:

> Plaintiff's resulting injuries and damages were proximately caused by one or more of the following acts of negligence on the part of Defendants, WRIGHT-WAY and/or WOODWORKS:
>
> a. Failing to properly install the subject cabinets in a safe and competent manner;
> b. Using inadequate screws and/or bolts for cabinet installation;
> c. Failure to secure installation through proper bracing;
> d. Failure to warn and/or instruct tenants about cabinet safety; and,
> e. Other acts of negligence which led to the cabinet failure.

*Id*. at PL003.

Pursuant to the Policy, Wright-Way sought a defense in the Underlying Lawsuit from CSU. Docket No. 30 at 6. CSU has agreed to defend Wright-Way under a reservation of rights. *Id*. But CSU also filed this suit, seeking a declaratory judgment that it owes no duty to defend or indemnify Wright-Way in the Underlying Lawsuit because Wright-Way failed to comply with the conditions required by the Independent Contractors Endorsement. Docket No. 1 at ¶ 4.2. CSU asserts that Wright-Way (1) failed to "verify Michael Jennings had valid commercial general liability insurance"; (2) failed to "include in the contract between Wright Way and Michael Jennings that Jennings/Woodside agreed to defend, indemnify and hold Wright-Way harmless from any and all liability, loss, actions, costs, including attorney[s'] fees for any claim or lawsuit present, arising from the negligent or intentional acts, errors or omissions of any independent contractor and subcontractor"; and (3) failed to "verify that Michael Jennings named Wright-Way as an additional insured under its Commercial General Liability Policy." *Id*.

CSU has now moved for summary judgment, arguing that it owes no duty to defend or indemnify Wright-Way because the "endorsement unambiguously states that in the event the conditions precedent[] are not met, the insurance will not apply." Docket No. 30 at 14. CSU has attached as an exhibit an "Independent Contractors Relationship Agreement" between Wright-Way and Jennings, and asserts that the Agreement fails to comply with the Independent

Contractors Endorsement. *Id*. at 14–16; Docket No. 30, Exhibit A at PL0073. CSU further argues that "Wright-Way also failed to verify that Jennings had valid commercial general liability insurance or that Jennings named Wright-Way as an additional insured under Jennings' insurance policies," and presents a letter from Jennings' lawyer stating that "Mr. Jennings . . . did not have insurance at the time this work was performed." Docket No. 30 at 14; Docket No. 30, Exhibit E at PL0094. "Based on the unambiguous policy language and abovementioned cases," CSU argues, "CSU does not owe a duty to defend or indemnify Wright-Way with respect to the claims asserted by Craig in the underlying lawsuit because it failed to comply with the conditions precedent set out in the Policy." Docket No. 30 at 16.

In response, Wright-Way does not dispute that it failed to comply with the requirements of the Independent Contractors Endorsement. *See* Docket No. 30 at 2. Wright-Way nevertheless argues that summary judgment for CSU is improper because the Underlying Lawsuit includes claims that "Wright-Way failed to warn and failed to instruct tenants about cabinet safety." *Id*. These claims, Wright-Way contends, "are separate and distinct claims, and do not arise from any act or omission on the part of the Independent Contractor, Michael Jennings." *Id*. "Accordingly, summary judgment for CSU is not proper because one or more claims in the Underlying Suit are covered claims and are not excluded under the Independent Contractor Limitations provision." *Id*. Defendant Craig adopts Wright-Way's arguments in full. Docket No. 36 at 6.

**ANALYSIS**

As explained below, CSU cannot show as a matter of law that it owes no duty to defend or indemnify Wright-Way in the Underlying Lawsuit. CSU's motion for summary judgment is therefore denied.

A. **CSU's Duty to Defend**

In Texas, the duty to defend is broader and separate from the duty to indemnify. *E.g., GuideOne Elite Ins. Co. v. Fielder Road Baptist Church*, 197 S.W.3d 305, 307 (Tex. 2006). An insurer may be required to defend a claim for which it may not be required to indemnify. *D.R. Horton Texas, Ltd. V. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 743 (Tex. 2009).

Texas courts have "defined the scope of the duty to defend broadly," with all doubts to be resolved "in favor of the insured." *GuideOne Specialty Mut. Ins. Co. v. Missionary Church of Disciples of Jesus Christ*, 687 F.3d 676, 683 (5th Cir. 2012) (citing Texas cases). If the factual allegations in the claim against the insured "potentially support a covered claim," then the duty to defend is triggered. *GuideOne Elite*, 197 S.W.3d at 310; *see also Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 552 (5th Cir. 2004) ("If any allegation in the complaint is even potentially covered by the policy then the insurer has a duty to defend its insured."). Furthermore, "[e]ven if the plaintiff's complaint alleges multiple claims or claims in the alternative, some of which are covered under the policy and some of which are not, the duty to defend arises if at least one of the claims in the complaint is facially within the policy's coverage." *Lafarge Corp. v. Hartford Cas. Ins. Co.*, 61 F.3d 389, 393 (5th Cir. 1995). As the Fifth Circuit has stated, "[w]hen in doubt, defend." *Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 369 (5th Cir. 2008).

In analyzing whether an insurer has a duty to defend, Texas courts apply the eight-corners rule. That rule provides: "[W]hen an insured is sued by a third party, the liability insurer is to determine its duty to defend solely from terms of the policy and the pleadings of the third-party claimant." *GuideOne Elite*, 197 S.W.3d at 307. In applying this rule, courts should give the allegations in the underlying complaint a liberal interpretation. *National Union Fire Ins. Co. v. Merchants Fast Motor Lines*, 939 S.W.2d 139, 141 (Tex. 1997); *see also Liberty Mut. Ins. Co.*

6

*v. Graham*, 473 F.3d 596, 600 (5th Cir. 2006) (allegations in underlying complaint should be "liberally construed in favor of coverage"). That said, courts must not "(1) read facts into the pleadings, (2) look outside the pleadings, or (3) imagine factual scenarios which might trigger coverage." *Gore Design Completions, Ltd.*, 538 F.3d at 369. "Facts ascertained before suit, developed in the process of litigation, or determined by the ultimate outcome of the suit do not affect the duty to defend." *Northfield Ins. Co. v. Loving Home Car, Inc.*, 363 F.3d 523, 528 (5th Cir. 2004).[1]

In this case, CSU argues that it owes no duty to defend Wright-Way in the Underlying Lawsuit because Wright-Way failed to comply with the requirements in the Independent Contractors Endorsement, and that Endorsement precludes coverage for "any loss, claim or 'suit' . . . arising out of the operations or completed operations performed for Wright-Way by any independent contractors or subcontractors." Docket No. 37 at 2. But the Petition in the Underlying Lawsuit is not limited to claims against Wright-Way arising out of operations performed by an independent contractor or subcontractor. Docket No. 30, Exhibit A at PL003. The Petition also alleges that Wright-Way was independently negligent for failing "to warn and/or instruct tenants about cabinet safety." *Id*. Construing this allegation in the light most favorable to the insured, as required by Texas law, the Court finds that the Petition potentially includes a claim against Wright-Way that would not be barred by the Independent Contractors Endorsement. A claim that Wright-Way failed to warn or instruct tenants about cabinet safety

---

[1] CSU argues that an exception to the eight-corners rule applies here because "it is impossible to discern whether the Independent Contractors Endorsement applies to preclude coverage without actually reviewing the Agreement [between Wright-Way and Jennings] at issue." Docket No. 30 at 10. Some courts have recognized an exception when it is "impossible to discern whether coverage is potentially implicated and when the extrinsic evidence goes solely to a fundamental issue of coverage which does not overlap with the merits of or engage the truth or falsity of any facts alleged in the underlying case," *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 531 (5th Cir. 2004). The Court, however, declines to do so here. As explained below, the Independent Contractors Endorsement does not apply for a different reason—the Petition in the Underlying Lawsuit potentially includes a claim against Wright-Way that would not be barred by the Endorsement.

does not arise out of "operations . . . performed for you by any independent contractors or subcontractors." Docket No. 30, Exhibit C at PL0073. Under Texas law, if the allegations in the underlying lawsuit against the insured "potentially support a covered claim," then the duty to defend is triggered. *GuideOne Elite*, 197 S.W.3d at 310.

CSU argues that "even if there are allegations of independent negligence against Wright-Way, the Independent Contractors Endorsement still applies to preclude coverage" because "there are clear allegations of negligence against Wright-Way's subcontractor, Jennings, which at a minimum, would have compelled Jennings' liability carrier to provide a defense to Wright-Way, and likely indemnity, as well." Docket No. 37 at 5–6. But Texas law holds that the duty to defend is triggered if at least one allegation potentially supports a covered claim—even if other allegations support claims that fall outside coverage. *See e.g., Federated Mut. Ins. Co. v. Grapevine Excavation Inc.*, 197 F.3d 720, 726 (5th Cir. 1999) (citing Texas law); *see also Zurich American Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008); *Rhodes v. Chicago Ins. Co., a Div. of Interstate Nat. Corp.*, 719 F.2d 116, 119 (5th Cir. 1983) ("Whether a complaint pleads in the alternative or alleges more than one cause of action, the insurer is obligated to defend, as long as the complaint alleges at least one cause of action within the coverage of the policy."). Further, CSU points to nothing in the Policy that would preclude coverage here simply because Jennings' "liability carrier" should have provided a defense to Wright-Way if Wright-Way had complied with the Independent Contractors Endorsement.

Accordingly, CSU has not shown as a matter of law that it is excused from the duty to defend Wright-Way in the Underlying Lawsuit.

**B.     CSU's Duty to Indemnify**

CSU also seeks summary judgment that it owes no duty to indemnify Wright-Way. As

CSU acknowledges, the duty to indemnify is ordinarily not ascertained until the underlying litigation is resolved. *See e.g., Zurich Am. Ins. Co.*, 268 S.W.3d at 490. CSU, however, argues that "the duty to indemnify may be resolved at summary judgment "when the insurer has no duty to defend and the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify." Docket No. 30 at 16, quoting *Farmers Texas Cty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997). Here, CSU asserts that "Wright-way's failure to comply with the Independent Contractors Endorsement" excuses both its duty to defend and its duty to indemnify. *Id*.

But as noted above, Wright-Way's alleged failure to comply with the Independent Contractors Endorsement does not excuse CSU's duty to defend Wright-Way here. The Petition includes an allegation against Wright-Way that does not "aris[e] out of operations or completed operations performed for [Wright-Way] by any independent contractors or subcontractors." Docket No. 30, Exhibit C at PL0073. Further, because the issue of Wright-Way's liability has not been fully determined in the Underlying Lawsuit, the Court cannot determine at this time whether CSU will be obligated to indemnify Wright-Way for its alleged negligence. *See Farmers Texas Cty. Mut. Ins. Co.,* 955 S.W.2d at 84 ("It may sometimes be necessary to defer resolution of indemnity issues until the liability litigation is resolved. In some cases, coverage may turn on facts actually proven in the underlying lawsuit."); *see e.g.*, *Mt. Hawley Ins. Co. v. Steve Roberts Custom Builders, Inc.*, 215 F. Supp. 2d 783, 793 (E.D. Tex. 2002); *Metro. Lloyds Ins. Co. of Texas v. Werkstell*, No. 4:16–CV–0028–ALM–CAN, 2017 WL 2901700, at *11 (E.D. Tex. May 16, 2017).

Accordingly, CSU's Motion for Summary Judgment (Docket No. 30) is **DENIED** without prejudice. Wright-Way's Motion for Continuance asserting that CSU's summary

judgment motion is "premature" (Docket No. 31) and Craig's Motion to Extend Time to respond to CSU's Motion for Summary Judgment (Docket No. 32) are **DENIED AS MOOT**.

So **ORDERED** and **SIGNED** this **10th** day of **January, 2019.**

_____
JEREMY D. KERNODLE
UNITED STATES DISTRICT JUDGE